The next case for oral argument this morning is 23-1352, United States v. Felton We'll wait for everybody to leave. You're welcome to come up if you want, but I'll wait  Does this seem like a very long minute to you standing there? This is great. What did you do this weekend? I mean, we could just talk about anything before. As long as it's not coming out of my rebuttal, Your Honor. Okay. Good morning, Mr. Summers. Whenever you're ready. Your Honor, and may it please the Court, Matt Summers, representing Appellant Donald Felton. This is the extraordinary case in which the government has, for years, conceded that substantial credibility information was omitted from a warrant affidavit, and then the same officer who left out that information proceeded to wait past the statutory and constitutional timelines before executing the warrant. If suppression is not warranted in this case, then at the very least, a Franks hearing to do additional fact-finding at the district court is required by this Court's precedent. Turning first to this Court's precedents in Glover v. Clark, those two cases are instructive here. They represent the fact that when there are serious material credibility omissions that are left out of a warrant affidavit, particularly when there was only one informant that the affidavit was based on, that those omissions are material and require a Franks hearing. What do you do with the remaining information in the affidavit? Does that not somewhat bolster in the corroboration that the lieutenant did outside of the information provided by the informant? I would point, Your Honor, to the decision in Clark, in which the other information actually looks quite similar to the information here. In Clark, the Court was faced with a circumstance in which the informant told them and then the officer actually specifically corroborated that one, there was only one individual in the hotel who was staying for one night and had paid entirely in cash. Two, the officer witnessed that same individual staying in that room quickly enter the parking lot and go into and out of five different cars. And there was the, quote, mom on a mission from that case who was tracking the person she supposed had sold her daughter heroin back also to room 203. That was the other information. But the important fact there, which helps us understand the materiality inquiry, was the fact that in that case, as here, no money or drugs had been seen changing hands. There were no controlled buys. But the officer had seen money during, not the traffic stop, but the abandoned vehicle investigation. There was money. So that's a distinguishing fact from Clark that we do have here. It's true that there was money, Your Honor. But I think the important feature is the analytical lens that Clark gave us for separating out kind of legal conduct and observed even suspicious behavior, like going in and out of five cars or having $2,000 in your car. Between that and then what I would construe as the critical assertion, the critical assertion that all of that suspicious behavior was used in order to further this conspiracy or this effort to obtain or to buy or to sell drugs. That critical assertion is where we have to focus on the credibility of the informant. Because it's the informant's assertion that that was part of a drug scheme that gets us potentially to probable cause. There was certainly credibility information left out of the affidavit here. The other convictions were all misdemeanors. From a materiality standpoint, given that the affidavit disclosed a felony conviction and the fact that the CI had been reliable on a number of occasions, does that take us out of the Glover context? So a couple of important things, Your Honor, because you're right that in both Glover and Clark, all credibility information had been omitted. Correct. I'm sorry to interrupt, but just so you understand the question, it's really twofold. You're right that all credibility information had been left out. Here, the credibility information that's included is about a felony conviction, which is more serious than a misdemeanor conviction. So does that tip the scale? It doesn't, Your Honor, because the central inquiry in both those cases focuses on what was left out. And that's, I think, the only way to read both Glover and Clark is thinking about what's not there. And so when you look at what's not there, it's strikingly similar to what was omitted in Clark and Glover. You have the fact that the confidential source had been paid, the fact that the informant had— But again, in Clark, there was no credibility information at all. And that's where Judge St. Eve is going, is that here, though, we do have two pieces. And that's this informant, this CS, I'm sorry, has provided reliable information in the past. This informant has a felony conviction for burglary. Those two pieces of information was before the issuing judge. Does that not distinguish this case from those in Clark? Dealing with those two facts separately, first, dealing with the providing reliable information in the past, this court in both Redrick and Kurth said that simply stating that an informant provided reliable information in the past is entitled to absolutely no weight. So the fact that when you say— In its totality. Go ahead. Yes, yes, so that's the first. That's assessing the first one first. And then the second one on the fact that there was a felony conviction, I would put forward, Your Honors, that providing some sort of a taste of credibility detracting information is in some ways worse than providing no credibility information at all because it implies that a disclosure has been made. If you think about the circumstances in Clark and Glover, particularly in Glover where the informant was presented to the magistrate judge— The law enforcement officer seeking a warrant has disclosed all the relevant information. I'm not sure that including some and not all has any different implication than not including any. That's, I think, another way to read the same facts, Your Honor. But I would submit that disclosing the—I think the appropriate test to use, and it can obviously apply to felony convictions and to other convictions, arrests, misdemeanors, et cetera, that was used in both Glover and Clark is to ask whether the information would have been considered to be Brady material, whether it would have been necessary for cross-examining, for example, an adverse government witness. So Giglio. Correct, yes. And so if you look at it from that lens, it's true that under Brady and Giglio you do have to provide felony convictions, but you also have to provide other substantially adverse credibility information. And the circumstance here is that, you know, you can't satisfy Giglio or Brady halfway. You have to satisfy them if you have material information. You need to allow the fact finder, in this case a magistrate, to be able to make a fully informed decision and to be the actual arbiter of probable cause, not the law enforcement officer themselves. And so in order to allow a fully informed inquiry by the magistrate or circuit judge here, you need to ensure that they've been provided all of that relevant information. Focusing on the questions that are asked for getting a Franks hearing, first, you know, when the omitted information is material, and second, when we can infer recklessness, Glover and Clark offer sort of a one-two punch on this. So as we've already discussed. It seems like the recklessness is the more challenging hurdle for you, material. The fact that a CI is getting paid and has convictions and may have thought he was getting a break on the possession of meth, I don't think, I certainly would not dispute that's material. So I think the recklessness is maybe where you should put your time. Thank you, Your Honor. That's what I'll do. So in Glover, the court looked at the omitted information and was actually able to, and in Clark, too, actually, was able to infer recklessness because of those omissions. So once you've satisfied step one, that there was materiality, which Your Honor indicated that there was, then you're already able to infer recklessness because that's the type of information that ought to have been disclosed. But didn't Clark try to clean up that inference language? Clark, I would submit, Your Honor, actually went even further on that inference of recklessness and not only said that you can infer recklessness by the omission, but that once you've inferred recklessness, you actually end up discounting the other corroborated information that came from the officer. I don't think this court needs to go quite that far in order to rule in this case. I think the inference of recklessness can be just the same as was done in Glover, or the first part of Clark gets you all the way there even without that second part. Well, do we need to do all that if we could just have a Franks hearing? No, Your Honor. A Franks hearing would be the appropriate remedy here. I would say, Your Honor, that you have to have a substantial preliminary showing, and that's what I've tried to do here and in the briefing in order to get there. But I'm saying your inference doesn't have to be proof. Your inference can just help you make that substantial showing necessary to warrant a Franks hearing. That's precisely right, Your Honor. Do you want to save your rebuttal time? I'll move to the second issue briefly, which is just to outline the extraordinary fact that the government hasn't put forward a case, nor have we been able to find one, in which a 13-day delay in execution of a warrant was still found to be constitutionally permissible. That that would warrant outright suppression in this case and is another remedy that this Court ought to consider. I'll save the rest of my time for rebuttal. Okay. Thank you. Mr. Kinestra. May it please the Court. Good morning, Your Honors. Jeff Kinestra on behalf of the United States. The district court correctly denied the motion to suppress here. Whether viewed with or without the extrinsic information the defendant relies on, the affidavit was supported by probable cause, and the defendant failed to make the substantial preliminary showing necessary to justify a Franks hearing. Mr. Kinestra, maybe you can help me out. Here's what I'm concerned with here. So we have an affidavit that was submitted in support of the tracker warrant. It is based on information from a confidential informant. There's a lot of credibility information missing, and I think the record is clear that the CI did not go, or the CS, did not go before the magistrate judge. Is that correct? The record doesn't show otherwise. Correct. So the information relies on information from the CS. We don't know if that information was based on his direct knowledge or told to him from somebody else. The affidavit does not disclose that he had eight arrests and four convictions. They were for misdemeanors, but it doesn't disclose that. It doesn't disclose that he was arrested three times for interfering with judicial proceedings and had one conviction for that. It doesn't disclose that he had a possession of meth charge pending. It doesn't disclose that he received $345 for the information he gave. It doesn't disclose that there were .6 grams of meth recovered at the location where the CS was and that he may have assumed he was going to get a pass on that charge. And this affidavit rests on the CI's credibility. That's a lot of troubling material information that I am sure the judge would have wanted to know about the CI. How do you get around that here? So a couple of things. First, if we're in the Franks world, this court applies the so-called hypothetical affidavit test. So it looks at everything in the affidavit, as well as the additional information, and the materiality inquiry asks not whether this would have been relevant or useful, but whether that complete hypothetical affidavit, including all the corroboration, as well as the potential impeachment information, would establish probable cause. And our position here, and the district court found correctly in our view, that even with all that additional information, the affidavit, given the detail and corroboration, still was supported by probable cause. What information do you have that puts, outside of the informant, in the hypothetical context of drug trafficking? So the hypothetical affidavit includes all of the information from the informant, as well as the impeaching information about the informant. So the source here gave, as the district court described it, considerable detail about the defendant's course of conduct, as well as considerable detail about... But we don't know if that was direct knowledge or came from third-hand from somebody else. We don't know if he's a rival drug dealer or his best friend. We don't have any basis in the hypothetical affidavit to assess where he got that information. And that's exactly where the corroboration comes into play, as the district court found. There was extensive corroboration here... But there's no corroboration here of any criminal activity, which is what concerns me. There is corroboration of the car. There's corroboration of the traffic stop. But unlike some of the other cases where we have affirmed no Frank's hearing, nothing here corroborates the criminal activity itself. So I disagree with that characterization, as did the district court, because the corroboration does show that the defendant was on a drug run at the time of the encounter. So the source explained that the defendant was on the way to St. Louis, that he was stopped on the very same road heading in this very same direction for the very same purpose. What supports that that was a drug run that occurred maybe 30 days before the tracker was approved? Right. We know there was a traffic stop. That's true. Right. So it's the combination of circumstances, which include the defendant in possession of a firearm lookalike. Do we know that, that it was a traffic stop? Was it an abandoned vehicle? I know there's different, you know, we have the call log saying one thing, and then we have the record saying another. So what was it a traffic stop? We don't know for sure if there was a traffic violation. We know it was an encounter where there was a stop with the officer on the side of the road at that same time and place. And during that stop, the officer found a starter pistol or firearm lookalike, also found a wad of cash, $2,000 cash. And the defendant told a phony story about what he was doing. He said that he was on his way to Mattoon, even though Mattoon is an hour in the opposite direction. And he said he was going to buy a smoker, even though it's after 1030 at night on a Sunday night. Again, where he's going is an hour away. So that's simply an implausible story. And when we have all the circumstances there, not only the phony story, the wad of cash, which this court itself can suggest an inference of drug dealing when found in suspicious circumstances. And when all that rounds out, the informants, the sources tip, saying, in fact, this defendant was on the way to St. Louis, which is exactly where he was heading, to buy methamphetamine, that when we have that corroboration, that in fact does provide the reasonable grounds to believe, which is all that's necessary. So, for example, in Draper, it was purely innocent conduct that was corroborated there. And there was much less detail in the informant's story. And yet the Supreme Court explained that all that's necessary when it comes to probable cause, which is a low bar, and an informant, is simply reasonable grounds to believe that the source's information is accurate. As to Your Honor's point about first-hand versus second-hand information, that was equally true in Gates. There it was an anonymous tip, and it was not clear whether it was first-hand or second-hand information. But yet the Supreme Court said that not only was it a richly detailed tip, just like it was here, but there was corroboration, including some innocuous details as well as some details suggestive of criminal activity, just like we have here. And so it was the detail and corroboration that allowed the issuing judge and here as well as the district court in assessing the existence of probable cause to conclude that there, in fact, is a substantial basis for crediting the source's information. Now, to Your Honor's point about the omitted information, undoubtedly the government has acknowledged, as we have throughout, the affidavit should have disclosed that. It's certainly the best practice. I would push back on the defendant's suggestion that there is a freestanding constitutional requirement to include all Brady or Giglio information in an affidavit. That is not the law. That would create a new circuit split. The obligation, as Frank's explained, is simply not to knowingly or recklessly misstate, falsify facts, and by corollary, not to lie by omission. But again, when it comes to omissions themselves, this court and the other circuits have recognized it is very rare that an omission itself will support an inference of the subjective intent, as to Frank's. That is a very substantial showing that Frank's made a point of saying this is a high bar, and that's all the more difficult when it comes to omissions. Although it's not just an omission. It's multiple omissions. That's correct. And that's also been the case in cases like Woodcork and Sanford and Hancock. And this court has again and again explained that even when there is substantial adverse credibility information omitted, that in itself doesn't necessarily justify an inference. Those cases had controlled bys with them and other factors that really corroborated there was criminal activity ongoing. That's correct. They did. That's what really troubles me here, that there was the traffic stop, whether it was an abandoned vehicle or pulled over, they did have an interaction, he did, with police officers. But it's not the same as a controlled by, where you see the drugs exchanging hands. That's correct. And I don't think there's a clone in this court's case law. And it was 30 days prior. Right. I note the case out of the Eighth Circuit in Williams, it's cited in the government's brief, relied exclusively on an informant's word there. And there was, I believe, no information about the source. This is a much stronger case than that. Materiality in the Franks' world is not relevance. So undoubtedly, this should have been provided. But the materiality asks whether, had this information been included, the issuing judge, there still would have been probable cause. But why wasn't it enough here to have a hearing on that question? Because even giving the defendant the benefit of all the doubt, so the district court held that even incorporating all this additional information into the affidavit, that affidavit still would have supported probable cause. But that's without giving the other side the opportunity to cross-examine. No, because that's confusing the two different elements of the Franks' claim. There's the probable cause aspect and then the subjective element. So the probable cause element, here the district court accepted as true and included all of the information in its probable cause analysis. And the court concluded that, in fact, that warrant did create probable cause. And so that's something, in the Franks' context, it's the district court that is in the position to draw any inferences. But isn't that after a Franks' hearing? That's where I'm confused. When we look at U.S. v. Taylor, we've kind of sidestepped that case in the argument because it's almost lockstep with the facts that we have in front of us.  So I'm trying to get beyond Taylor so I can appreciate the government's position. Right. And so our position is that a Franks' hearing would not be necessary because even incorporating all of the additional information, probable cause still exists. The Franks' hearing would be for the purpose of cross-examining the officer on the subjective element. And, of course, in a Franks' analysis, it's only those specific facts as to which there was a subjective intent to mislead that the court adds in to the probable cause analysis on that element. But here the court did incorporate all of the adverse information concerning the source, considered that with all the information in the affidavit, focusing on the detail and corroboration, and concluded that even if the affidavit, the so-called hypothetical affidavit, did include all of that adverse information about the source, probable cause would still be present. And so in a Franks' context, it's the district court that draws those inferences about the informant's credibility through actually drawing the inferences about the officer's credibility would have to await a Franks' hearing if the defendant has made a substantial preliminary showing. But, again, there are two distinct elements in Franks'. There is the absence of probable cause and the subjective element. The district court independently found that the defendant hadn't made the substantial preliminary showing necessary on the subjective element, in part for reasons already discussed, that there was not a complete omission. As the circuits generally agree, when a defendant relies on omissions themselves to establish a subjective element, only when that information is clearly critical to the existence of probable cause, meaning it would negate probable cause, will the omissions themselves support the subjective element. That's consistent with this court's precedent because the only cases in which this court has found omissions themselves to even justify a Franks' hearing is where not only was there a complete omission of all credibility information, but that information would have negated the existence of probable cause. I'd add that the affidavit here did include substantial information about the source, most notably that the source was a convicted felon with a felony bravery conviction. It also reflected that the source, in fact, had a history of acting as a confidential informant and was a registered confidential informant for the police, and given the detailing corroboration, also showed that this was a person who had inside information about the drug rule. So this court has repeatedly recognized that issuing judges understand that people who are acting as confidential sources are hoping to get something for it. Now, the affidavit here didn't specify what it was, certainly it should have, but none of the information here would have told the issuing judge anything that would have been a surprise to them. As to the criminal history, again, the affidavit disclosed the most significant one, the felony conviction. The defendant has yet to articulate any way in which, for example, a couple of driving while suspended convictions cast the informant's credibility in any different light than what the judge already understood. Although the one interference with judicial proceedings, that certainly may strike a judge as interesting, and a judge may want to know more. So a couple things about that. First, as the affidavit reflects, that conviction was so old that the computer system didn't even have any details about it. And second, in the jurisdictions that actually have such an offense, it's the sort of thing that's committed by failing to show up for jury duty or violating an order of protection. So although the defendant tries to portray it as sinister, given the name, I think that's really not the case, and the defendant hasn't made the substantial showing necessary. But can we make that determination on this record without a hearing? The court certainly can as to probable cause, which the district court did here. The district court was fully apprised of that information and still found probable cause. And again, when the defendant is relying exclusively on omissions, the fact that the affidavit did include the much more notable one, the felony burglary conviction, that cuts against the subjective element as well. I'd be happy to answer any questions your honors have about either the execution or anything else. Otherwise, the government would rest on its briefs. Thank you. Thank you. Mr. Summers, rebuttal. Your honors, and may it please the court, two points on rebuttal. First, the government argues that the warrant would have been sufficient even if it had included the omitted information. But there are three problems with this. First, the government is essentially asking for a do-over, pretending as if the confidential source, that their credibility-detracting information had been provided in the first place and then evaluating things. That would allow magistrate and circuit judges around this circuit to be prevented from getting full information when they make their decisions at the outset. That ought not be the rule. Second, if it were true that the warrant would have been sufficient without the confidential source, then the officers would have obtained the warrant a month earlier. After the roadside encounter, they would have had all that they needed and would have proceeded with getting the warrant. That wasn't what happened here. Instead, they obtained drugs at the confidential source's house and then inquired to the confidential source to find out information about Felton and went to obtain a warrant. But third, the critical assertion here can't be relied on. The critical assertion is that the conduct that was described, having money and a starter pistol, that that was part of a drug scheme. As Your Honors have pointed to, in order to rely on the assertion that that was part of a drug scheme and not just without relying purely on speculation, you would need to have some kind of credible person saying that that's what was going on here. And that's why the government, throughout this process, even in obtaining the warrant, has relied so much on the confidential source. But I would encourage Your Honors to ask yourselves whether that assertion, that confidential source, is someone who can be relied on after, irrespective of the meaning of what interfering with judicial proceedings precisely means in this case, that that's something that we should probably do fact-finding on. But more broadly, this is an informant whose house had been searched days before who had a pending felony conviction, who had gotten consideration in the past for himself and their friends. This is the kind of confidential source whose assertions ought not be relied on in this case. The government relies on the notion that the district court looked at this, considered the omitted factors, and decided that probable cause existed. But as this court has repeatedly held, including in Taylor, that there ought to be no weight accorded to the district court's conclusion of whether the facts add up to probable cause. That is a determination that this court ought to make on its own and, in order to do so, ought to rely on all of the damaging credibility information. Second. The district court didn't say much about the Franks hearing either. That's exactly right, Your Honor. And in this case, on this record, a Franks hearing would be an appropriate remedy to do further fact-finding, learn what, in this case, it means  understand what the officer knew about it. Given the minute that we have, though, would we need to send this back? Wouldn't this just qualify under the good-faith exception? No, Your Honor. The reason that it doesn't qualify under the good-faith exception is for the same reason that it didn't in both Glover and Clark. Once we've inferred recklessness, let me answer the question slightly differently. It's true that a Franks hearing would allow us to test that inference of recklessness and decide whether the good-faith exception applies, but it's true that this court could look past the good-faith exception, find that there was no good faith here. As Judge Posner wrote in Owens, when you're presented with critically deficient information in the warrant affidavit, that's the type of warrant that is not entitled to good faith. So it is possible to grant outright suppression here without even referring to a Franks hearing, Your Honor. Additionally, for the timing information, that would be an appropriate remedy too. However, we think the Franks hearing argument here is essentially a closed case based on this court's decisions in both Glover and Clark. Thank you. Thank you, Mr. Summers. I understand you were appointed to represent your client in this case. Thank you to both you and your firm for your strong representation. Mr. Kinster, thank you as well. The case will be taken under advisement, and the court is going to take about a 10-minute break before the next case.